(No. 48573.-

RITEWAY PLUMBING, Appellant, v. THE INDUSTRIAL
COMMISSION et al.—(Ivon Brain, Appellee.)

*Opinion filed September 20, 1977.*

Brody & Gore, of Chicago, for appellant.

Flynn, Galvin & Ryan, of Chicago (Thomas G. King and Emmett J. Galvin, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Claimant, Ivon Brain, sought workmen's compensa-

tion for injuries sustained while he was working for Riteway Plumbing on December 4, 1969. The arbitrator found that the claimant had sustained injuries to his spleen and arm arising out of and in the course of employment and entered an award accordingly. Further, the arbitrator found that the claimant failed to prove a causal connection between the accident and back injuries which had caused the claimant to incur substantial medical bills as well as miss prolonged periods of work. Additional evidence was introduced on review before the Industrial Commission, which, in addition to the award granted by the arbitrator, granted the claimant an award for the injuries he had sustained to his back. On *certiorari* before the circuit court of Du Page County the Commission's findings were confirmed. The employer has appealed directly to this court pursuant to our Rule 302(a) (58 Ill. 2d R. 302(a)). The sole question we are asked to decide is whether the Commission's finding that the claimant's back injuries were causally connected to the accident is against the manifest weight of the evidence.

The claimant had been employed as a plumber by Riteway Plumbing. On December 4, 1969, while hanging six-inch water pipe, the ladder on which he was standing collapsed. Brain fell against the rim of the ladder and crashed to the floor, a distance of approximately five feet. As a result of the accident, he fractured several ribs and sustained serious injury to his spleen. He was taken to Central Du Page Hospital, where he was placed under the care of Dr. Robert Bonus. Dr. Bonus removed his spleen and treated him for his broken ribs. Brain received no treatment for his back during this period of hospitalization, nor did he complain of back injury to Dr. Bonus, although he testified that his back had been hurting him since the time of the accident. He was released from the hospital after 10 days.

After his release Brain testified that he continued to

experience back pain. He visited his family doctor, Dr. Olson, who had periodically treated him for prostate trouble. He began to receive prostate treatment at regular monthly intervals, but when the pain worsened he contacted Dr. Bonus, who referred him to Dr. Tovarek, a urologist at the Glen Ellen Clinic. After examining Brain on October 4, 1970, Dr. Tovarek referred him to Dr. Brian Huncke, an orthopedic surgeon at the same clinic.

Dr. Huncke first saw the claimant on October 19, 1970. At that time he made a tentative diagnosis of "spine disc" and placed the patient on medication. Brain continued under the conservative care of Dr. Huncke through August 1971.

Between August 1971 and May 1974 Brain was hospitalized on several different occasions because of persistent back problems. During each of these hospital visits Dr. Huncke supervised various therapeutic and diagnostic procedures designed to alleviate Brain's chronic back disorder.

Between the time of the decision of the arbitrator (August 1973) and review by the Commission, the claimant's condition deteriorated. In May of 1974, Dr. Huncke referred him to the Marion Joy Rehabilitation Hospital, where he was placed under the care of Dr. Robert Pesch. Dr. Pesch, as a result of a physical examination, diagnosed Brain's ailment as chronic low back pain, possibly related to muscle imbalance. Dr. Pesch fitted Brain with an electronic stimulator, which relieves pain by preventing pain sensations from reaching the brain.

Dr. Huncke testified on behalf of the claimant before the arbitrator and also at the rehearing before the Commission. Dr. Busch, a doctor who had examined Brain in 1971, 1973, and again in 1974, also testified on his behalf before the arbitrator and before the Commission. Dr. Pesch testified at length before the Commission. It is the contention of the employer that the testimony of the

doctors, in light of what the employer offers as impeaching evidence, establishes that the Commission's finding that the claimant's back injuries were causally connected to the accident on December 4, 1969, is against the manifest weight of the evidence.

The employer contends that the claimant's failure to complain of injury to his back immediately after his accident, as well as the absence of treatment for back injury during the initial period of hospitalization, compel the conclusion that the claimant's back was not injured during the fall. Further, the employer argues that Brain had no back trouble as late as October 11, 1970. On that date Brain had visited the employer's doctor, Dr. Zurfli, and made complaints of pain in his side and chest, but failed to complain to the doctor of the presence of any back pain. The employer contends that this fact also supports the conclusion that the claimant's back was not injured during the fall and impeaches his testimony that his back had been hurting him since his accident.

While these arguments are not without merit, we cannot say that they raise anything more than questions of credibility and conflicting testimony. It is well settled in this State that it is within the province of the Industrial Commission to determine questions of this nature, and such determinations will only be set aside if against the manifest weight of the evidence. (*Illinois Institute of Technology v. Industrial Com.* (1975), 60 Ill. 2d 64.) In respect to the employer's arguments raised above, we feel the record as a whole supports the Commission's decision to resolve them in favor of the claimant.

First, there is evidence in the record that Brain's failure to complain of back pain during his initial period of hospitalization was due to the severity of his other injuries: Examining the medical testimony as a whole, the Commission could have reasonably inferred that a patient with several broken ribs and a seriously injured spleen may not

have been immediately aware of any appreciable injury to his back. This is consistent with the claimant's testimony that his back pain grew more severe as the injuries to his ribs and spleen subsided. And, assuming momentarily that the pain had not started as late as October 11, 1970, when Brain visited the employer's doctor, Dr. Zurfli, and made no complaints of back problems, we are not convinced that the Commission erred in finding a causal connection between the claimant's back disorder and the accident. Dr. Pesch, an experienced doctor familiar with the claimant's injury, testified that it was not unusual for patients to sustain injury of the type suffered by the claimant and not complain of pain until months afterwards. Dr. Huncke's testimony to the effect that this would be possible, but improbable, gave rise to a conflict of testimony, but, as we have said, it is well within the province of the Commission to resolve such conflicts. We will not reverse the Commission merely because some evidence incompatible with its finding exists in the record.

We hasten to point out that there is ample evidence in the record from which the Commission could have reasonably inferred that the claimant's complaints started long before his visit to Dr. Zurfli on October 11, 1970. Brain testified that he had experienced pain from the onset of the accident on December 4, 1969. Dr. Huncke, who saw the patient for the first time on October 19, 1970, testified that Brain complained of having back pain since the accident. Further, it is undisputed that Brain began seeing Dr. Olson for back pain shortly after he was released from his initial visit to Central Du Page Hospital. While Dr. Olson apparently treated him for prostate trouble, there is evidence that, due to the similarity of pain, he was actually experiencing disc problems caused or aggravated by his accident. In any event, whether the Commission believed that Brain had pain from the time of the accident, or whether it chose to believe that the pain began months

afterwards, its finding of a causal connection between the accident and the claimant's injuries is well supported by the record.

The employer argues that the records of Marion Joy Rehabilitation Hospital clearly establish that the claimant's pain did not start until as late as 1971. The employer specifically cites the report of a hospital social worker, Anne Piermattei, to support this conclusion. Mrs. Piermattei had interviewed Mrs. Brain upon her husband's admission to Marion Joy Hospital in May of 1974; the employer points to that portion of the interview in which Mrs. Brain told Mrs. Piermattei that her husband's back problems started in 1971.

Upon examining the record with regard to this evidence, we cannot say that the records of Marion Joy and the testimony of Mrs. Piermattei add much weight to the employer's case. First, Mrs. Piermattei testified that she did not recall the conversation with Mrs. Brain, although she testified that the record of the conversation was an accurate depiction of what transpired. The record of Mrs. Piermattei's notes, however, had been destroyed and the typewritten record which remained had been typed by a secretary out of her presence. Further, Mrs. Brain testified that she did not remember telling the social worker that her husband's pain began in 1971, and, moreover, testified that his pain began immediately after the accident. Furthermore, Dr. Pesch, who examined Brain upon his admission to Marion Joy, testified that he had complained of episodes of pain since the accident on December 4, 1969. Consequently, examining the totality of evidence, we cannot say that the existence of Marion Joy records, while not without evidentiary value, would compel a different result by the Commission. While the inclusion of the records created a conflict of evidence, based on the evidence we have just summarized the Commission's resolution of the conflict in favor of the

claimant is clearly supported by the record.

The employer argues that the medical testimony of Drs. Huncke, Busch and Pesch did not establish sufficient proof of a causal connection between the claimant's back injuries and the accident on December 4, 1969. In regard to Dr. Huncke, the employer cites that portion of the doctor's testimony in which, in response to whether or not the doctor felt that the fall was the cause of Brain's back condition, he stated "No, because there have been a lot of intervening events." The employer also argues that Dr. Huncke at one point admitted that Brain's condition was actually caused by a degenerative disc. As regards the testimony of Drs. Busch and Pesch, the employer contends that it is speculative and without value because both doctors based their opinions of causal connection on the assumption that the employee had hurt his back during his accident. For reasons discussed below, we feel that the employer's arguments concerning the testimony of all three doctors are unpersuasive.

First, it is clear that the testimony of Dr. Huncke, examined in its entirety, is consistent with the Commission's finding of a causal connection between the claimant's fall and his ensuing back ailment. The portion of the record extracted by the employer refers to the doctor's opinion as to whether he thought the accident was *the* cause of Mr. Brain's back disorder. However, on two other occasions Dr. Huncke testified that in his opinion the fall may have contributed to Mr. Brain's back injury. As we have held in the past, this is enough to support an award. (*Leason v. Industrial Com.* (1973), 55 Ill. 2d 486.) The accident need not be the sole cause or even the principal cause of the disability. The employee must only prove that it was a causative factor. Consequently, the fact that Dr. Huncke testified that the fall was not the *sole* cause of Brain's back condition is of little help to the employer, since the doctor's testimony as a whole sufficiently

establishes *a* causal relationship.

Similar reasoning can be employed in response to the employer's contention that the claimant's back problems were the result of a "degenerative disc," a condition that Brain may have developed almost 30 years before the accident. The employer cites testimony of Dr. Huncke to this effect. Upon examining the record, it is unclear whether Dr. Huncke admitted that Mr. Brain had a degenerative disc. However, assuming that Dr. Huncke did so admit, we fail to see how this would require a different conclusion by the Commission. The record supports the conclusion that Brain's "degenerative disc" could have been aggravated by his accident. The law is clear that aggravation or acceleration of a preexisting disease is an injury which is compensable under the statute, if caused by some accident occurring in the course of employment. (*Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326.) Consequently, Dr. Huncke's testimony is not successfully impeached by his admission that the claimant's back problems may have been precipitated by a preexisting condition.

The employer's final argument—that the opinions of Drs. Busch and Pesch concerning the causal connection between the injury and accident are speculative and without value because they assumed that the claimant had hurt his back during the fall—is without merit. The record contains the testimony of the claimant to the effect that he had hurt his back when he fell from the ladder. This fact being in evidence, it was properly included by counsel in his hypothetical question. It was the function of the Commission to weigh the credibility of the claimant and to determine the evidentiary value of expert opinions premised on hypothetical questions in part comprised of facts he had provided. Viewed in this light, we cannot say that the testimony of Drs. Busch and Pesch did not rise to the level of medical certainty necessary to support an award

by the Commission.

In summary, after reviewing the record as a whole, we feel the Commission's finding of a causal connection between Brain's back injury and the accident on December 4, 1969, is not contrary to the manifest weight of the evidence. All three doctors who testified were experienced physicians who were familiar with Brain's back condition. All three gave lengthy and technical expert testimony concerning his back disorder, and each testified to a reasonable degree of medical certainty that in his opinion a causal relationship existed between that disorder and the accident. All three underwent cross-examination by the employer's counsel.

As we have previously stated, we will not overturn a finding of the Industrial Commission unless it is contrary to the manifest weight of the evidence. (*Moore v. Industrial Com.* (1975), 60 Ill. 2d 197.) In the case at bar, for reasons discussed above, the Commission's findings were well supported by the evidence. Accordingly, the judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*