(No. 51726

RUBY L. BROOKS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Roosevelt Memorial Hospital, Appellee).

*Opinion filed December 3, 1979.—Rehearing denied February 1, 1980.*

UNDERWOOD, J., dissenting.

David M. Wittenberg, of Chicago, for appellant.

John P. McAuliffe, of Weidner & McAuliffe, of Chicago (William J. Harte, Ltd., of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The claimant, Ruby L. Brooks, sought to recover workmen's compensation for injuries sustained while she was employed as a nurse's aide for Roosevelt Memorial Hospital on October 11, 1975. The parties stipulated during the hearing before the arbitrator that the accidental injuries arose out of and in the course of the claimant's employment. The arbitrator, however, denied an award on the basis that the injury did not arise out of the employment. A corrected decision was entered later by the Industrial Commission which found that the injury did arise out of and in the course of the claimant's employment, but denied compensation because the claimant failed to prove a causal connection between the injury and the claimant's present condition of ill-being. The circuit court of Cook County, on *certiorari,* confirmed the decision of the Industrial Commission. The claimant appeals pursuant to Rule 302(a). 58 Ill. 2d R. 302(a).

On October 11, 1975, the claimant was working as a nurse's aide at Roosevelt Memorial Hospital. As she walked between two beds, she slipped and fell, striking her lower back against the foot of one of the beds. The claimant went to the nurse's station, reported the accident, and was sent to the emergency room of the hospital. A doctor on duty in the emergency room prescribed a pain killer for her, and instructed her to go home to bed and to return the next day for X rays. The claimant followed the doctor's instructions. The X rays revealed that she had not suffered any fracture or dislocation as a result of the accident. The claimant has consistently maintained that the pain she feels in her lower back and down her left leg commenced with the accident of October 11, 1975.

The claimant saw Dr. Jesse Weinger on October 17,

1975. Dr. Weinger testified that upon examination of the claimant he noticed decreased forward flexion of the spine, some right paravertebral muscle spasm, and a mild left thoracal lumbar scoliosis. He diagnosed her injury as acute lumbosacral sprain, and stated that he could not be sure at that time if there was a herniated disc. Pursuant to Dr. Weinger's recommendation, the claimant did not return to work until October 27, 1975. When she did return to work, she needed help in performing her duties and complained of constant pain. She stopped working December 4, 1975. On December 5, 1975, she returned to Dr. Weinger. He took X rays which showed a mild narrowing of the L5-S1 disc space. Dr. Weinger diagnosed claimant's condition at that time as a mild herniated disc. The claimant returned to work for intermittent periods over the next year.

The claimant was admitted to Michael Reese Hospital on March 28, 1976. An electromyogram (EMG) was performed which showed a minimal S1 radiculopathy bilaterally, indicating nerve root irritation. Such a showing is consistent with a disc herniation. Thereafter on April 6, 1976, the claimant underwent a myelogram, which was negative. On May 21, 1976, the claimant again was examined by Dr. Weinger. At that time he discovered a positive Lasegue sign on the left side, which indicates radicular pain. Dr. Weinger also noted weakness in all the muscles of the left leg, probably because of a functional overlay. The doctor also testified that though he could not make a positive diagnosis at the time of the hearing before the arbitrator, June 2, 1976, the definite findings of left-sided pain and the positive EMG warranted further study. The arbitrator thereafter denied compensation.

On review before the Industrial Commission, in May 1977, the claimant repeated her version of the accident and reviewed her medical history. Dr. Carlo Scuderi, who examined claimant three times in 1977, subsequent to an exploratory laminectomy performed January 3, 1977,

testified at the continued hearing held in September 1977. Dr. Scuderi testified that X rays taken on February 28, 1977, showed a narrowing of the lumbar sacral disc and droplets of pantopaque from the myelography. He also stated that there was considerable atrophy of the sacrospinalis muscles, that two of seven tests performed on the claimant yielded positive evidence of ligamentous instability and sciatic nerve irritation, and that claimant walked with a bad limp on the left leg and her left thigh showed visible shrinkage. In response to a hypothetical question, Dr. Scuderi answered that he thought there was a causal connection between the incident of October 11, 1975, and the claimant's present condition of ill-being. On cross-examination, Dr. Scuderi said that in his examinations of the claimant he could not find any objective clinical evidence of injury, only subjective evidence as manifested by her pain.

Roosevelt Memorial Hospital tendered two reports of Dr. Ben Camacho, indicating the results of examinations conducted January 28, 1976, and July 5, 1977. The reports confirmed claimant's version of the accident and her description of the pain. The second report described a scar resulting from the laminectomy. It also indicated that the test results had been negative except for the straight leg test, indicating pain at the back, primarily on the left side. Dr. Camacho's later report also contained the statement: "If it can be shown that the surgery [laminectomy] done was due to the alleged episode of October 1975, then the usual lump sum for similar cases is indicated for disposition purposes."

The sole issue is whether the Industrial Commission's finding that the claimant failed to prove a causal connection between the injury and the claimant's present condition of ill-being is against the manifest weight of the evidence.

Proof of good health prior to the time of injury and a subsequent condition of ill-being involving injury to the

affected area creates an issue of fact as to the causal relationship between the injury and the condition of ill-being. (*A. O. Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240, 245.) The factual determinations of the Industrial Commission will not be set aside unless they are contrary to the manifest weight of the evidence. (*Riteway Plumbing v. Industrial Com.* (1977), 67 Ill. 2d 404, 408.) The claimant testified that she had suffered a minor injury to her back in either 1972 or 1973, but that she had not encountered any other problem with her back until the accident of October 11, 1975. Drs. Weinger and Camacho also noted that the claimant has a spina bifida occulta of L1 and L2, a congenital condition brought about by a failure of the posterior arch of the spine to fuse. This condition would not break the causal connection, how-ever, since "the law is clear that the aggravation or acceleration of a preexisting disease is an injury which is compensable under the statute, if caused by some accident occurring in the course of employment." (*Riteway Plumbing v. Industrial Com.* (1977), 67 Ill. 2d 404, 412.) Thus, the claimant has raised an issue of fact concerning the causal relationship between her injury and her present condition. In order to establish the right to compensation, the claimant need not prove that some phase or act of employment was the sole causative factor. (*Material Service Corp. v. Industrial Com.* (1973), 53 Ill. 2d 429, 434.) She must only prove that her employment was *a* causative factor. *County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, 29.

We think that a clear and unbroken causal connection between the claimant's injury and her subsequent condi-tion of ill-being has been shown. From October 11, 1975, onward, the claimant has sought medical treatment for the injury she has persistently stated occurred to her lower back, causing her severe pain both in the lower back and in her left leg. There is no medical testimony which conflicts with the conclusion that the accident of October 11, 1975,

caused her present condition. In fact the hospital's exhibits—Dr. Camacho's reports—corroborate this conclusion. Furthermore, any assertion by the hospital that the claimant did not present evidence of objective symptoms or conditions as required by section 8(b)(7) (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(b)(7)) must fail. That requirement of the statute was deleted on July 1, 1975, shortly before the claimant's accident. (Pub. Act 79—79, 1975 Ill. Laws 252.) Finally, though the hospital would assert that the exploratory laminectomy was an independent intervening cause of the claimant's present condition, it is a test procedure which became necessary only after less drastic tests proved negative. It would not have been performed had the claimant not suffered the injury on October 11, 1975. Therefore, the laminectomy is part of the causal connection.

For the reasons stated above, the decision of the Industrial Commission is contrary to the manifest weight of the evidence. The judgment of the circuit court is reversed, and the cause is remanded to the Industrial Commission for the entry of an appropriate award.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE UNDERWOOD, dissenting:

I cannot agree that the unanimous action of the arbitrator, Industrial Commission and circuit court of Cook County in denying compensation was contrary to the manifest weight of the evidence. The record before us contains no objective evidence supporting or accounting for claimant's allegations of pain. Dr. Weinger, who had originally thought claimant had an acute lumbosacral sprain, some six weeks later diagnosed her condition as a mild herniated disc. By the time the case was heard by the arbitrator the doctor indicated he could find no pathology and could not make a positive diagnosis. X rays and a myelogram were essentially negative. Dr. Matz's

report, not referred to by the majority, found no neurological deficits.

Between the arbitrator's denial of compensation and the hearing before the Commission, claimant underwent further examination. Another myelogram was negative, and the results of a lumbar venogram were inconclusive. Because claimant persisted in her complaints of pain an exploratory laminectomy was performed. It, too, was negative. Dr. Scuderi testified that if claimant were suffering "true pain" nature would be expected to "splint the back" in response to that pain and that he found no "evidence of paravertebral muscle splinting."

In short, it seems to me that, considering the deference usually paid Commission findings (see, *e.g., Gould National Batteries, Inc. v. Industrial Com.* (1966), 34 Ill. 2d 151), the unanimous denial of compensation here cannot be said to be contrary to the manifest weight of the evidence.

I would affirm.