278

(No. 58191.—

CLARA DALRYMPLE, Appellee, v. THE INDUS-
TRIAL COMMISSION *et al.* (Champion Furnace Com-
pany, Appellant).

*Opinion filed March 23, 1984.*

McConnell, Kennedy, Quinn & Johnson, Chartered, of Peoria (Robert H. Jennetten and Michael J. O'Leary, of counsel), for appellant.

Warren E. Danz, P.C., of Peoria (Richard G. Leiser, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

The claimant's employer, Champion Furnace Company (Champion), has appealed from a judgment of the circuit court of Peoria County which set aside findings of the Industrial Commission on the ground that they were contrary to the manifest weight of the evidence.

On May 10, 1977, the claimant, Clara Dalrymple, when lifting cartons in the shipping department of Champion, made a twisting motion and experienced pain in her lower back. She continued to work and did not report the incident to her employer until the following day. On the next day, she visited her family physician, Dr. Lorin Whittaker, and complained of pain in the lower back and right knee. Dr. Whittaker also noted that the claimant reported "occasional back trouble prior to the accident." Dr. Whittaker prescribed analgesics and muscle relaxants and ordered X rays of the affected areas.

The X rays proved to be negative but the claimant's pain persisted. Dr. Whittaker referred her to Dr. Dennis Garwacki, a neurologist. Dr. Garwacki, in his neurological examination, found that the claimant had a "diminished right knee jerk" and a "decreased pin prick" in

the lower right leg. Dr. Garwacki preliminarily diagnosed the condition as a "right L4 root lesion" and recommended hospitalization for physical therapy. The claimant first declined to be hospitalized and reported some improvement. Later she experienced increased pain and was admitted to St. Francis hospital in Peoria, where an electromyography was performed. The results of this were not compatible with an L4 lesion. A "lumbar myelogram" taken was inconclusive. Nevertheless, Dr. Garwacki continued to feel that the claimant's reports of pain were compatible with an L4 root lesion, and that her twisting accident could have caused or aggravated the condition. Dr. Garwacki then consulted Dr. Richard Flores, who diagnosed the condition as an L4 or L5 root lesion, but he was uncertain whether the claimant's twisting incident caused the condition.

The claimant was discharged from the hospital on July 6, 1977, and at that time Dr. Garwacki noted that she was "symptomatically improved." The claimant sought no medical treatment until she began treatment at the Jefferson Street Clinic in Peoria because of a soreness in her right leg and hip. Clinic records noted that a few weeks later the claimant "felt pretty good." On August 19, 1977, she reported to the clinic that she "almost slipped and fell" the day before, and was experiencing increased pain.

The claimant then returned to Dr. Garwacki and reported further pain closer to the tailbone and numbness in the lower right leg. She was again treated with muscle relaxants. One month later she was still reporting pain, but Dr. Garwacki could not make any objective findings. She was referred to Dr. Flores for "transcutaneous nerve stimulation" of the lower back. Two weeks later, the claimant reported "fairly good relief," but still experienced pain upon sitting and driving a car. Later, she was fitted with a back brace and obtained a transcu-

taneous nerve stimulator unit. Dr. Flores saw her on several occasions throughout December and January, and she was still reporting pain. During that period she was given heat and ultrasound therapy on an outpatient basis. On February 1, 1978, the claimant was reported to be "totally asymptomatic as far as her back was concerned, with the exception of small soreness occasionally in the middle of the lumbosacral joint." In April 1978, the claimant was hospitalized for 18 days for physical therapy. Up to the time of the arbitration hearing, she reported chronic lower-back pain. Dr. Garwacki stated that in his opinion the claimant was not able to return to her former work but added that this opinion was based solely on her subjective reports of pain.

An arbitrator awarded the claimant 75 weeks of temporary total disability benefits and 40 weeks of permanent partial disability benefits representing 20% permanent loss of use of her right leg. After taking additional testimony, the Industrial Commission modified the award on May 16, 1980, reducing the permanent partial disability award from 40 weeks of benefits to 20 weeks or to 10% permanent loss of use of the right leg. The claimant sought review, and on April 28, 1981, the circuit court held on *certiorari* that the decision of the Commission in regard to permanent disability was "against the manifest weight of the evidence." The court set aside the finding as to permanent partial disability and further ordered that "[t]his cause be remanded to the Industrial Commission for reconsideration of the Award, and the taking of further evidence, if necessary, and the entering of an Award of partial permanent disability consistent with the evidence and consistent with this Court's findings."

On remand, the Industrial Commission heard additional oral argument, but no new evidence was introduced. On July 12, 1982, the Commission entered a new finding,

changing the award from 10% permanent loss of use of the right leg to 4% of the whole person. The monetary amount of the permanent partial disability compensation was not affected by the changed finding.

The circuit court again granted *certiorari* and, setting aside the Commission's award as contrary to the manifest weight of the evidence, entered its own award:

> "Pay to the petitioner the sum of $93.87 per week for a period of 100 weeks, as provided in section 8(d)2 of the Act, for the reason that the injuries sustained caused the permanent disability of 20% of the petitioner."

The employer appealed from this order to this court under Rule 302(a) (87 Ill. 2d R. 302(a)).

The employer contends that the findings of the Commission were not against the manifest weight of the evidence and that the circuit court improperly substituted its own interpretation of the evidence.

It is apparent that the claimant did have a back ailment; making the factual determinations required here was not, however, without difficulties. The testimony raised issues of credibility, of causation, and of aggravation of pre-existing injuries. The claimant did not report the accident the day it occurred. Her family physician, who examined her first, spoke of "occasional back trouble prior to the accident," although she denied at the arbitrator's hearing making this statement. On the issue of causation, no physician could testify with medical certainty that the "twisting accident" was the sole cause of, or an aggravating factor in, her back condition. Too, there was the question of an injury subsequent to the accident. The claimant testified that she "slipped" in August 1977, and the medical records showed that she reported additional pain after this incident.

All of these questions represented questions of fact for the Industrial Commission to determine. It is the responsibility of the Commission to judge the credibility of wit-

nesses (*Campbell v. Industrial Com.* (1983), 99 Ill. 2d 210, 218; *Veritone Co. v. Industrial Com.* (1980), 81 Ill. 2d 97, 104; *Riteway Plumbing v. Industrial Com.* (1977), 67 Ill. 2d 404, 408), to resolve whether "there is a causal connection between the claimant's injuries and the employment" (*Domagalski v. Industrial Com.* (1983), 97 Ill. 2d 228, 236), and to determine whether the injuries are an aggravation of a preexisting condition (*Caradco Window & Door v. Industrial Com.* (1981), 86 Ill. 2d 92, 99; *Ross v. Industrial Com.* (1980), 79 Ill. 2d 258, 261). In making these determinations it is within the province of the Commission to draw reasonable inferences from the evidence and determine the weight the evidence is to be given. *A. O. Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240, 246.

We cannot say that the original award by the Industrial Commission of 20 weeks of permanent partial disability benefits was not a product of reasonable inferences drawn from the evidence. Even if this court, or a circuit court, might have drawn different inferences from the evidence, "this court will not disregard or reject permissible inferences drawn by the Commission *** nor will we substitute our judgment for that of the Commission unless its findings are against the manifest weight of the evidence." *Castaneda v. Industrial Com.* (1983), 97 Ill. 2d 338, 341.

We consider that the Commission's findings in the first award were not contrary to the manifest weight of the evidence and that the circuit court substituted its own inferences for those of the Commission.

For the reasons given, the judgment of the circuit court of Peoria County is reversed, and the award of the Industrial Commission of May 16, 1980, is reinstated.

*Judgment reversed;*
*award reinstated.*