LARRY W. REYNOLDS, Plaintiff-Appellee, v. WARREN E. DANZ, Indiv. and d/b/a Warren E. Danz, P.C., Defendant-Appellant.

Third District No. 3—88—0065

Opinion filed August 8, 1988.

Stephen R. Swofford, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and David E. Jones, of Thomas & Hinshaw, Culbertson, of Peoria (Bruce L. Carmen, of counsel), for appellant.

Ray Moss, of Ray Moss & Associates, of Clinton, for appellee.

JUSTICE BARRY delivered the opinion of the court:

On January 20, 1986, plaintiff, Larry Reynolds, brought this action in the circuit court of Peoria County for damages allegedly resulting from the malpractice of defendant attorney Warren Danz. Plaintiff claims that he suffered a back injury at work for which he has not been fully compensated because defendant failed to pursue timely remedies on his behalf under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) (count I), the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*) (count II), and the Social Security Act (count III). With respect to count I, both parties moved for summary judgment. On January 26, 1987, the trial court denied defendant's motion and granted judgment in favor of plaintiff on the issue of liability. The trial court found as a matter of law that defendant "committed acts of negligence and professional malpractice by failing to perfect a timely appeal" of an adverse decision in plaintiff's workers' compensation claim and that the adverse decision by the Industrial Commission was against the manifest weight of the evidence and it would have been reversed on appeal to the circuit court had an appeal been timely perfected.

The court's findings were affirmed on defendant's motion for re-

consideration. The parties then agreed that the court's decision involves questions of law as to which "there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The court, accordingly, certified these questions for review:

"(1) Was the decision of the Industrial Commission against the manifest weight of the evidence or contrary to Illinois law when the Commission found as follows:

'The Commission further notes that the evidence presented on review basically addressed the question of Petitioner's condition of ill-being subsequent to the February 4, 1982 surgery, but not the threshold issue of whether or not that surgery was reasonable and necessary as the result of the accident of May 7, 1980, and also references *Zick v. Industrial Commission*, 93 Ill. 2d 353 (1983)'?"

and

"(2) Even assuming, arguendo, that the Commission was correct in its finding that the surgery was not 'reasonable and necessary as the result of the accident of May 7, 1980,' is an employer liable under the Workers' Compensation Act for a condition of ill-being or disability resulting from such surgery where the surgery was performed by a physician of the employee's choice?"

The appeal was perfected to this court pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308).

Because the first question concerns the manifest weight of the evidence, it is necessary to set forth in some detail a history of plaintiff's injury as it appears from the Industrial Commission record. On May 7, 1980, plaintiff was employed as an electrician-welder. Plaintiff sprained or strained his back while lifting a steel I-beam overhead. Plaintiff promptly reported the injury and received conservative medical treatment for lumbar strain, including Dynawave, moist heat, exercises and instructions to avoid heavy lifting and to rest in bed when at home.

Plaintiff was subsequently hospitalized and treated conservatively by Dr. Saleh Obaisi, M.D., who initially diagnosed plaintiff's condition as "severe sprain of lumbosacral region of the spine." Obaisi referred plaintiff to Dr. M. Stephen Huss, an orthopedist, who described plaintiff's condition as "an acute lumbosacral strain which has become chronic." Plaintiff was also referred to Dr. Jerome Kaufman, head of the department of neurosurgery at Carle Clinic, Urbana. Dr. Kaufman reported that plaintiff had been seen by Drs. Menguy and Tobin of the

orthopedics and neurology departments, respectively. A myelogram was done which disclosed "no significant root defect, either cervical or in the lumbosacral area." Electromyography and nerve conduction studies were performed as well, and they "were completely within normal limits with no objective evidence of any radiculopathy or neuropathy." Conservative treatment and anti-inflammatory and muscle relaxant drugs were recommended.

In September 1980, Obaisi saw plaintiff again and wrote, "It seem[s] clearly that this case is a chronic type of strain to the bone and ligaments of the lumbar spine affecting the spinal nerves." At that time, Obaisi recommended that plaintiff not return to his usual type of work.

Plaintiff filed for and received temporary total disability benefits under the Workers' Compensation Act for the period May 7, 1980, through January 14, 1981. On January 15, 1981, plaintiff returned to work as a welder, having received a full release from Dr. Obaisi. Plaintiff testified that he continued to experience pain, stiffness and swelling in the back; however, he was not reinjured and did not see a doctor again until January 1982. Meanwhile, plaintiff was dismissed from his employment in November 1981 for failure to wear safety glasses.

After his dismissal, plaintiff discussed his condition with a friend who suggested that plaintiff see Dr. Lawrence B. Holden, a neurosurgeon at St. Francis Hospital, Peoria. Plaintiff was subsequently referred to Dr. Holden by defendant. On January 8, 1982, Holden interviewed plaintiff and performed an examination. Holden noted no limitation or restriction of activity at the time; but, based on plaintiff's complaint of back pain radiating into the left leg (according to Dr. Holden's deposition testimony), the doctor recommended that plaintiff be as active as possible and return for reexamination in a month. Plaintiff did as he was told, engaging in various physical activities, including scuba diving, erecting a shed on his property, wood chopping and motorcycling.

On January 22, plaintiff returned to see Dr. Holden complaining of increased pain in the right leg and low back. Plaintiff was hospitalized and, upon examination, had forward flexion limited 45 degrees and positive straight leg raising on the right of 45 degrees. X rays revealed straightened usual lumbar lordosis creating the impression of spasm. When bedrest failed to give plaintiff any relief, Holden decided to operate. On February 4, 1982, without performing any further tests, Holden performed a lumbar laminectomy. He noted a protruded disk at the L5, S1 interspace level and removed the central

portion of the 5th disk. Holden admitted that he had seen a letter from Dr. Kaufman to Dr. Obaisi dated September 17, 1980, in which Kaufman had stated that myelogram and nerve conduction testing had been done indicating no disk or nerve root involvement at that time. He further admitted that a protruded disk could have been caused by something other than plaintiff's May 1980 accident; but he did not believe that the activities plaintiff said he had engaged in between the two examinations in January would have done more than aggravate an already existing protruded disk.

At his appearance before the Industrial Commission in September 1983, plaintiff testified that he continued to see Dr. Holden on a monthly basis. Plaintiff stated that he felt that his condition was deteriorating because the pain continued in his low back and both legs and radiated up into his shoulders.

Based on the foregoing evidence, plaintiff's claim for workers' compensation benefits after January 14, 1981, was denied. The arbitrator found "no evidence that the surgery performed by Dr. Holden *** was necessary or required," and that plaintiff's "current low back problems exist subsequent to surgery not necessitated by [the May 7, 1980,] accident." The arbitrator concluded that plaintiff had "failed to prove any causal connection between the *** accident and the present condition of ill-being complained of."

On review before the Industrial Commission, the arbitrator's decision was affirmed in an opinion dated September 7, 1984. The Commission observed that another examining physician, Dr. John G. Meyer, who had seen plaintiff in March 1983, testified that he could not state whether plaintiff's condition at that time was caused by the 1982 surgery. The Commission noted further that plaintiff's evidence failed to address the issue of whether the 1982 surgery was reasonable and necessary as a result of the May 7, 1980, accident. The Commission therefore concluded that it had no reason to change the decision of the arbitrator. The Commission's decision was not appealed to the circuit court, as aforesaid.

 When leave to appeal an interlocutory order is granted under Supreme Court Rule 308, our review is limited to those questions that have been certified by the trial court. (*Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 510 N.E.2d 409.) It seems logical to consider the questions certified in this case in the reverse order presented. The second question asks whether an employer is liable under the Workers' Compensation Act for a condition of ill-being or disability resulting from surgery that is unreasonable and unnecessary when that surgery is performed by a physician of the em-

ployee's choice. Defendant says that the answer is "no" and cites to *Zick v. Industrial Comm'n* (1982), 93 Ill. 2d 353, 444 N.E.2d 164. Plaintiff seeks to distinguish *Zick* on its facts, pointing out that, unlike this case, issues of the operating doctor's malpractice and the claimant's mistreated congenital anomaly were there introduced. Plaintiff suggests that *Brooks v. Industrial Comm'n* (1979), 78 Ill. 2d 150, 399 N.E.2d 603, is factually analogous and supports the trial court's finding of liability here.

In *Zick*, the arbitrator denied claimant workers' compensation benefits on the ground that there was no causal relationship between claimant's injury and her present condition of ill-being. This decision was upheld on review by the Commission and the circuit court. In addressing the issue of the respondent employer's liability, the supreme court observed that the Commission had determined that the claimant's condition of ill-being resulted from mistreatment of a congenital anomaly of the foot, not from claimant's earlier, work-related injury. The court did not find the Commission's factual determination contrary to the manifest weight of the evidence. On appeal, the claimant argued that even if her treating physicians had committed malpractice, she was obliged to seek medical treatment for the foot following the injury and her employer should be liable for any aggravation of the injury or new injuries resulting from her doctors' malpractice. *Zick*, 93 Ill. 2d at 362, 444 N.E.2d at 167.

The *Zick* majority disagreed. They reasoned:

"[C]laimant voluntarily submitted to treatment by a physician of her choice. Where such treatment results in a disability unrelated to an injury sustained during employment, it would be unjust to hold the respondent liable. *Cf. Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 238[, 408 N.E.2d 198] (the likelihood that plaintiff's chosen doctor would inflict emotional distress is plaintiff's risk, not the employer's)." 93 Ill. 2d at 362, 444 N.E.2d at 168.

In his dissent, Justice Simon took strong exception to the majority's holding "that even if claimant's current disability was caused by an operation induced by work-related pain, she cannot recover for it if the choice of doctors was her own." (93 Ill. 2d at 363, 444 N.E.2d at 169 (Simon, J., dissenting).) In support of his position that this holding was unwarranted, Justice Simon cited to numerous precedents, including *Brooks*, wherein compensation had been approved despite the fact that the claimant's condition of ill-being resulted from treatment by a physician of claimant's choosing.

Obviously, *Zick*, being the more recent decision, overrules *Brooks*

to the extent that the precise question here presented was addressed in *Brooks*. In the present case, plaintiff voluntarily submitted himself to Dr. Holden for treatment. Assuming that Dr. Holden's surgery in this case was not "reasonable and necessary as the result of the accident of May 7, 1980," and assuming further that plaintiff's condition of ill-being resulted from that surgery, *Zick* clearly controls the question of the employer's liability. As we see it, the parties essentially are asking this court to determine whether *Zick* remains good law. It does. *Zick* was decided by this State's highest court and has never been overruled. Accordingly, we agree with defendant that the second question certified for our review must be answered in the negative.

■ The first question certified for our review asks whether the Industrial Commission's decision was contrary to Illinois law or against the manifest weight of the evidence. The question is unnecessarily complicated by language quoted from the Commission's written opinion which the parties have characterized as the Commission's "finding." The Commission, in affirming the arbitrator's decision to deny benefits, made an observation about the nature of the evidence presented by plaintiff in support of his request for review. That is, that plaintiff's proof went to the question of whether plaintiff was temporarily or permanently, partially or totally disabled subsequent to Dr. Holden's surgery in February 1982, but failed to enlighten the Commission on the linchpin issue of whether there was a causal relationship between plaintiff's present condition of ill-being and the May 7, 1980, accident. In this regard, the Commission cited to *Zick*. We interpret the Commission's comments to mean simply that the additional evidence presented by plaintiff on review missed the point. In order to overcome the arbitrator's decision, plaintiff would have had to establish that his condition of ill-being was the result of the accident and not some intervening cause or Dr. Holden's surgery itself.

As we have earlier noted, the employer's liability is limited where treatment by a physician of the claimant's choice results in a condition of ill-being unrelated to a work injury. (*Zick*, 93 Ill. 2d 353, 444 N.E.2d 164.) Thus, we find that the Commission properly focussed on the causal relationship between plaintiff's current disability and the May 7, 1980, accident.

The arbitrator found that plaintiff's condition as a result of the accident did not justify surgery. There is ample support for this conclusion inasmuch as no less than five physicians who examined plaintiff after the accident determined that surgery was not indicated. There was evidence that plaintiff improved with conservative treatment, inasmuch as plaintiff was given a full release from his doctor in

January 1981. Plaintiff did not develop objective symptoms of a back injury until January of 1982, after he had worked without restrictions or reinjury for approximately 11 months and, at Dr. Holden's request, had engaged in as much physical activity as he could immediately prior to Holden's follow-up examination in January 1982. At that point, plaintiff's condition was noticeably deteriorated. Without further testing to determine whether conservative treatment was still appropriate, Dr. Holden performed back surgery in February and found a protruded disk. Dr. Holden could not state from objective evidence that the protrusion had developed as a result of plaintiff's work-related injury in 1980. There was some evidence that back surgery could result in the condition of ill-being that plaintiff complained of at the time of his hearing before the Industrial Commission. Plaintiff testified before the Commissioners that the pain radiating from his back was worsening, thereby supporting the conclusion that the surgery itself caused his current condition of ill-being.

The facts before us are similar to those presented in *Odie v. Industrial Comm'n* (1982), 88 Ill. 2d 514, 431 N.E.2d 374. There, as here, the Commission found that the claimant's evidence was inadequate to establish the reasonableness or necessity of back surgery performed by a physician of the claimant's choosing several months after an injury at work and after conservative treatment had been indicated in the absence of objective clinical findings. There, as here, there was evidence that the claimant had left his employment for reasons unrelated to his injury before seeking surgical treatment. On review, our supreme court affirmed the denial of workers' compensation benefits, stating,

> "Dr. Berry went ahead with the surgical procedure even though the findings of Dr. Vaidya and the myelogram results did not indicate there was any need for it. And the surgery established that claimant did not have a herniated disc or any other abnormality requiring such treatment. Reluctant as we are to set aside the independent judgment of the operating physician, the facts here so clearly justify the conclusion that the lumbar fusion was not reasonably required that we cannot say the Commission erred." 88 Ill. 2d at 520, 431 N.E.2d at 377.

◼ As the court observed in *Odie*, we are obliged to accept the Commission's determination on the question of whether medical treatment is reasonable and necessary to cure or relieve from the effects of an accidental injury (see Ill. Rev. Stat. 1985, ch. 48, par. 138.8(a)) if that finding is not contrary to the manifest weight of the evidence. The Commission's decision denying benefits in this case is not con-

trary to the manifest weight of the evidence. Accordingly, we answer the first question certified for our review in the negative as well.

The judgment of the circuit court is reversed and this cause is remanded for further proceedings consistent with the holdings herein.

Reversed and remanded.

STOUDER, P.J., and SCOTT, J., concur.