MICHELE LeFEBVRE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (University of Chicago Medical Center, Appellee).

First District (Industrial Commission Division)   No. 1—94—4004WC

Opinion filed October 27, 1995.—Rehearing denied December 20, 1995.

Martin J. Healy, Jr., & Associates, of Chicago (Daniel B. Malone, of counsel), for appellant.

Kane, Doy & Harrington, Ltd., of Chicago (Gerald F. Cooper, Jr., of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Michele LeFebvre (claimant) filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.* (now 820 ILCS 305/1 *et seq.* (West 1994))) alleging she sustained accidental injuries on November 30, 1984, which arose out of and in the course of her employment with University of Chicago Medical Center (employer). The Industrial Commission (Commission) affirmed the arbitrator's decision that claimant's injuries were not work related. The circuit court confirmed the Commission's determination. The issues on review are (1) whether the arbitrator erred in denying claimant's motion to grant a continuance and reopen proofs; and (2) whether the decision of the Commission was against the manifest weight of the evidence. We affirm.

On November 30, 1984, claimant worked for employer as a radiology records manager. Her duties included handling the X-ray film operations. On Friday, November 30, 1984, claimant and five coemployees were instructed to move 50-pound boxes containing X-ray records from a storage room. After lifting approximately five boxes, claimant noticed a severe pain in her low back. Claimant testified that when she finished supervising the work, she went to her office

and called her supervisor, Maria Myrianthopoulos. Claimant said she reported the accident to Myrianthopoulos and asked to leave work early that day. However, Myrianthopoulos denied that claimant called her that day to report the accident.

Claimant did not seek immediate medical attention and returned to work on the following work day, Monday, December 3, 1984. She neither filled out an injury report nor reported to the employee health service for treatment. She testified that she went to see a chiropractor, Dr. Karen Berk, on December 28, 1984; however, no medical records were submitted from Dr. Berk. On January 4, 1985, claimant saw Dr. Hekmatpanah and allegedly told him that she was injured at work. However, nothing in the medical records indicates a work-related injury. The records merely state:

> "This is a 28-year-old lady who works in the x-ray department. She began to have pain in her back about 3-4 weeks ago gradually going down to the posterior aspect of the right leg. As she did more exertion, such as dancing or traveling, the pain became more. Also carrying packages made it worse to the point where the pain became very severe."

On January 6, 1985, Dr. Hekmatpanah admitted claimant to the hospital and performed a lumbar laminotomy and removal of protruded disc. Claimant was released to return to work on March 1, 1985. She worked for employer only until March 4, 1985, at which time she left and went to work for her brother. Claimant did not seek further medical treatment until January 2, 1987, when she noticed a flare-up of back pain while traveling and carrying luggage over the Christmas holidays. As a result, she went to the Cicero-Fullerton Chiropractic Center, where she was examined and received one physical therapy treatment. Although on the "Patient Insurance Information Sheet" claimant checked the "yes" box concerning whether her claim resulted from an on-the-job injury, under "Past Health History/Major Accidents or Falls" claimant merely listed an injury to her head occurring in 1964; she did not list the injury to her back allegedly sustained at work in 1984.

On January 9, 1987, claimant again was examined by Dr. Hekmatpanah and she gave the following history:

> "[Claimant] had been doing well and had been very active until this past Christmas season. While traveling, she tried to carry a good deal of luggage. She began to have pain in her back which radiated to the right leg. She has been having pain for the past several days."

From January 16 until March 13, 1987, claimant received acupuncture treatments from Dr. James Lo to help relieve her back

pain. On April 22, 1987, Dr. Lo found claimant disabled but indicated that if her condition improved with treatments she could return to work with restrictions. Claimant discontinued treatments based on her disability and financial difficulties. On May 1, 1987, claimant filed an application for adjustment of claim pursuant to the Act.

The aforementioned evidence was elicited at a hearing before the arbitrator on April 26, 1991, and on September 6, 1991. On the latter date, when employer rested, claimant's attorney indicated to the arbitrator that he planned to call Freda Davis as a rebuttal witness based on Maria Myrianthopoulos' testimony. The arbitrator responded: "We were supposed to have finished this case today. *** Your witnesses were supposed to be in here today." After discussion concerning the lengthy duration of the case (almost seven years) and the arbitrator's determination in closing proofs that day, the arbitrator denied claimant's request for a continuance.

On September 30, 1991, a hearing was held on claimant's motion to reopen proofs and allow Freda Davis to testify. Attached to the motion was Davis' affidavit, which stated in part:

"I was secretary to Maria Myrianthopoulos from 1984 to February, 1985.

I recall [claimant] coming into Maria's office in December 1984 to discuss being injured by lifting boxes in the early part of the previous day. [Claimant] hurt her back and was in tears from pain when she spoke."

The arbitrator denied the motion to reopen proofs and rendered his decision. The arbitrator denied compensation on the basis that claimant failed to prove her state of ill-being was related to an accident which arose out of and in the course of her employment. The arbitrator relied on the fact that (1) claimant did not prepare an injury report or go to the employee health service facility; (2) the medical reports of all treating doctors failed to indicate that claimant reported the injury was work related; and (3) Maria Myrianthopoulos' testimony, whereby she stated that claimant never reported an accident, was credible, and claimant's testimony was not credible.

The Commission adopted and affirmed the decision of the arbitrator. On review, the circuit court vacated the decision of the Commission for reasons unrelated to this appeal. On remand, the Commission again affirmed and adopted the decision of the arbitrator that claimant failed to prove an accident arose out of and in the course of her employment. On review, the circuit court held the arbitrator committed error in denying claimant's motion to grant a continuance and to reopen proofs. The court further found, however, that any error was harmless because "the testimony of Freda Davis would not

have added any weight to claimant's case." The circuit court then confirmed the decision of the Commission.

Claimant contends it was an abuse of discretion for the arbitrator to deny her request for a continuance and to reopen proofs. We disagree.

Myrianthopoulos testified on behalf of the employer and refuted claimant's allegation that she called Myrianthopoulos on the day of the accident to report that she had injured her back at work. Myrianthopoulos stated that claimant did not tell her about her back injury until she was in the hospital in January 1985 and at that time claimant stated that the injury occurred while she was break dancing with her nephew. Myrianthopoulos also denied that claimant told her she was in the hospital because of her job. When employer rested its case, claimant's attorney requested a continuance in order to call Freda Davis in response to Myrianthopoulos' testimony. In denying the request for a continuance, the arbitrator stated:

"THE ARBITRATOR: You knew [Myrianthopoulos] was going to be here to testify. You know what the issues in dispute here are.

\* \* \*

THE ARBITRATOR: Counsel, you could have brought in any witness that you wanted to the first time to support your client at the time that this case was up the first time and there was a continuance from July the 10th up until today's date. This case has been continued since April the 10th, 1991, and all the parties have had ample time to bring in whatever witnesses that they wanted to bring in, and this case is going to end today."

■ A trial judge has broad discretion to grant or to deny a motion for a continuance and that decision will not be reversed absent an abuse of discretion. (*Farrar v. Jacobazzi* (1993), 245 Ill. App. 3d 26, 29, 614 N.E.2d 259.) Similarly, pursuant to the Act, an arbitrator has the discretion to grant a continuance to place the testimony of a witness into evidence. (*University of Illinois v. Industrial Comm'n* (1992), 232 Ill. App. 3d 154, 157, 596 N.E.2d 823.) The arbitrator may grant a continuance and extend the time for closing proofs if there is a showing of "good cause." 50 Ill. Adm. Code Parts 7020, 7030 *et seq.* (1991).

■ The initial testimony of claimant was given on April 26, 1991. The cause was continued to July 10, 1991, and again continued to September 6, 1991, to receive additional evidence and close proofs. Claimant's attorney said nothing to the arbitrator about procuring additional witnesses until after Myrianthopoulos testified on September 6, 1991. Counsel's sole reason for requesting a continuance was that he was "surprised" by Myrianthopoulos' testimony

and he would have had Davis present at the hearing had he known what Myrianthopoulos' testimony would be. However, the failure to anticipate the testimony of a witness is not necessarily the type of surprise which requires a continuance. Rather, the decision rests in the sound discretion of the arbitrator. (*University of Illinois*, 232 Ill. App. 3d at 158.) At the time of the requested continuance, the case was already almost seven years old. Claimant's attorney knew proofs would be closed on September 6, 1991, and should have been aware of the evidence needed to present and support his case.

Claimant cites *Rutzen v. Pertile* (1988), 172 Ill. App. 3d 968, 527 N.E.2d 603, in support of her position that the arbitrator abused his discretion in denying a continuance. In *Rutzen*, the court held it was an abuse of discretion to deny a short continuance (approximately one hour) to the defendant, who was late arriving at trial due to an airplane delay and inclement weather. That case is distinguishable from the one at bar because there the requested continuance would have extended the trial only one hour, rather than days or weeks as in the instant case. Moreover, in *Rutzen* the court was dealing with the absence of defendant and his wife (actual parties to the suit) from trial, rather than the absence of a witness as in the case *sub judice*. Accordingly, we find that the arbitrator did not abuse his discretion in denying claimant's request for a continuance.

Moreover, assuming *arguendo*, that the arbitrator did abuse his discretion, we believe it was harmless error. It is represented that Davis would have testified that claimant went into Myrianthopoulos' office to discuss being injured at work on the previous day. Claimant, on the other hand, testified that she called Myrianthopoulos the day of the accident to report the injury. Myrianthopoulos denied claimant's assertion and testified that claimant neither told her the injury was work related nor discussed the injury at all with her until she was in the hospital. Although Davis' testimony is inconsistent with Myrianthopoulos' testimony, it still does not support claimant's story that she called Myrianthopoulos on the day of the accident to report the injury. As stated by the circuit court:

> "[T]he testimony of Freda Davis would not have added any weight to claimant's case since her proposed testimony conflicts with the testimony given by the claimant. The claimant testified that on the day of the accident, she spoke to Maria Myrianthopoulos. Freda Davis states in her affidavit that the claimant reported the accident to Ms. Myrianthopoulos on the following day. The claimant testified that the report was made over the telephone, while Freda Davis states that the claimant came in person to Ms. Myrianthopoulos' office. Additionally, Freda Davis stated that the

claimant was 'in tears from pain.' Yet, in her testimony, the claimant did not recount such an event." Further, Davis' affidavit states that she recalled claimant coming into Myrianthopoulos' office on the day following the accident. However, claimant was injured on a Friday and did not work on Saturday or Sunday. Thus, the credibility of Davis herself is questionable. Again, the Commission found Myrianthopoulos' testimony to be more credible than that of claimant and the admission of Davis' excluded testimony would have done nothing to bolster claimant's credibility. Accordingly, even if it was error to exclude Davis' testimony and deny a continuance, the error was harmless.

■ Claimant also contends the Commission's finding that she failed to prove a work-related injury is against the manifest weight of the evidence. " 'The manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of the evidence." [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. [Citation.]' " *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54, 426 N.E.2d 1276, quoting *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 499, 375 N.E.2d 553.

The Commission adopted and affirmed the arbitrator's decision that claimant failed to prove she sustained a work-related injury on November 30, 1984. In doing so, the Commission found claimant's testimony was not credible and was not supported by medical records. On the other hand, it found the testimony of employer's witness, Maria Myrianthopoulos, to be credible. It is the province of the Commission to weigh and resolve conflicting evidence and credibility of witnesses. (*Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442, 559 N.E.2d 1034.) "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." *Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108.

There is evidence in the record which supports the inferences drawn by the Commission. First, the testimony of claimant and her supervisor, Maria Myrianthopoulos, was in conflict. Claimant testified that she called Myrianthopoulos on the day of the accident to report her injury. Myrianthopoulos denied that claimant called her that day and testified that claimant did not tell her she had injured her back until she went into the hospital in January 1985. Myrianthopoulos also testified that claimant told her the injury occurred

while she was break dancing with her nephew; she did not say the injury was work related. The Commission could have chosen to accept claimant's testimony that she reported the accident to her supervisor, but did not elect to do so. Again, it is the responsibility of the Commission to judge the credibility of witnesses and we cannot substitute our judgment for that of the Commission merely because different or conflicting inferences may also be drawn from the same facts. *Martin*, 227 Ill. App. 3d at 219.

Second, the medical records failed to support claimant's testimony. Had claimant really told all treating physicians that she was injured in an accident at work, it is unlikely that none of them would have included this information in their reports. Relying on *Eagle Sheet Metal Co. v. Industrial Comm'n* (1980), 81 Ill. 2d 31, 405 N.E.2d 785, claimant contends the doctors' failure to record claimant's injury as work related should not lead to the conclusion that her injury is not work related. In *Eagle Sheet Metal Co.*, the court stated that a doctor's failure to record an accident does not necessarily mean the accident did not occur. However, in that case, the doctor testified that claimant verbally told him of the accident. In the instant case, claimant did not proffer any similar corroborating evidence. Claimant stresses the fact that on the "Patient Insurance Information Sheet" at the Cicero-Fullerton Chiropractic Center claimant checked the "yes" box concerning whether her claim resulted from an on-the-job injury. However, under "Past Health History/Major Accidents or Falls," claimant merely listed an injury to her head occurring in 1964; she did not list the injury to her back allegedly sustained at work in 1984.

Claimant also argues that no alternative explanation was offered to explain her injury and notes that "[p]roof of good health prior to the time of injury and a subsequent condition of ill-being involving injury to the affected area creates an issue of fact as to the causal relationship between the injury and the condition of ill-being." (*Brooks v. Industrial Comm'n* (1979), 78 Ill. 2d 150, 154-55, 399 N.E.2d 534.) Undoubtedly, the record indicates that claimant suffered a back injury that required surgery. The question, however, is whether she sustained such injury to her back in an accident at work. This is a question of fact to be determined by the Commission (*Brooks*, 78 Ill. 2d at 155), and the Commission here found otherwise. The Commission relied on the fact that claimant did not procure testimony from witnesses to the accident, although she said that there were five of them. Further, she did not seek medical treatment until one month later. She did not fill out an injury report, despite knowing the procedure for doing so, and did not go to the employee health service. In

view of the record, the Commission's conclusion is not against the manifest weight of the evidence. Accordingly, the decision of the Commission is affirmed.

Affirmed.

McCULLOUGH, P.J., and COLWELL, HOLDRIDGE, and RAR-ICK, JJ., concur.